Joseph Lief, J.
In this Special Term action the plaintiff seeks to foreclose a mechanic’s lien which it filed for the work, labor, and services performed and materials furnished. The complaint alleges that the parties entered into a contract and that the defendants agreed to obtain the financing. The plaintiff alleges that it duly performed the conditions of the contract; that it did its work between June 7 and June 10. In a second cause of action, the plaintiff seeks to recover the loss of profits. The defendants’ answer contains a counterclaim in addition to denials.
The plaintiff, a corporation engaged in the construction of swimming pools, and the defendant Donald Freeman, a homeowner on the North Shore of Long Island, on May 15, 1961 executed a paper writing providing for the construction of a pool on the latter’s property. Indorsed on the printed form used by the plaintiff was the note: “Final Financing to be determined”, followed by the initials of the signatories to the document. This paper also provided ‘ ‘ approximate date of construction June 1st, 1961”. Discussions as to terms of financing preceded and followed the execution of the instrument. At plaintiff’s request the defendant Donald Freeman signed a *509 statement containing additional information which was to be submitted by the contractor on an application for credit to a finance company. This statement indicated that repayment was to be made in 60 equal monthly installments. Then on May 24, 1961 the same defendant, at the plaintiff’s request, executed a retail installment obligation and a promissory note. While the balance due on the contract was $5,000, the defendant was to pay $6,750, which sum of course included the time charges. Almost immediately the plaintiff learned that the application for credit had been rejected and that the so-called “ approval ” of the finance company was conditioned on the plaintiff’s obtaining the signatures not only of the defendant Donald Freeman, but also that of his wife, to the note and a mortgage on their home securing its payment. This the defendants refused to do.
On June 1, 1961, on plaintiff’s application, a permit for the construction of the pool was issued. On June 7 the excavation was begun, materials were delivered to the site, and a substantial part of the work was completed on June 10 when plaintiff stopped work. There is no doubt that prior to June 1, on the date when the application for the permit was made and before plaintiff began its work, it knew that its application for credit had been rejected and that the defendants had refused to comply with the conditions imposed by the finance company. It must be assumed that since the work was proceeding on the property owned by the defendants and in which they lived at the time, they knew that the work was being done. Had the plaintiff proceeded to completion of the work, the court might have come to a conclusion different from that reached here.
The plaintiff then made various proposals to the defendant Donald Freeman for terms of financing which varied from those to which the said defendant had agreed after signing the “contract”, all of which the defendant rejected. Thus the situation remained throughout the Summer. In a letter dated September 8, 1961, the plaintiff, among other things, advised the defendant that it had obtained an approval by a bank. The plaintiff did not attempt nor offer to complete the pool. The defendant, in an answering letter, indicated that he would execute the notes if payment were postponed until May of 1962, in view of the fact that he would not have the use of the pool until the Summer of that year, and informed plaintiff that its failure to arrive at an agreement would be treated as an abandonment of the contract and that the defendant would seek to recover the expense incurred for restoration of the premises.
On June 1, 1962 the defendant again wrote to the plaintiff advising it that the Building Inspector for the village had noti *510 fled him that the pool construction permit had expired; that in view of the abandonment of the project by the plaintiff the excavation was a danger to children and damaging to the appearance of his property; asked them to remove the materials and restore the premises and that he would hold them in damages for their failure to do so. Thereafter, the defendant filled in the excavation. The defendant offered no proof of his counterclaim and it is dismissed.
It is obvious from the phrasing used by the parties, “ Final Financing to be determined ’ ’, that it was an agreement to make an agreement in the future. The terms of payment were an important consideration to the parties and the instrument executed by the parties which lacked a material element was not a contract. (Ansorge v. Kane, 244 N. Y. 395.)
We agree with the plaintiff’s contention that a valid contract is not a prerequisite to the contractor’s having a lien under the Lien Law and with its further contention that -the proper consent of the owner eliminates the need for a formal contract. However, as held by the court in Jenkin Contr. Co. v. Sixth Ave. & 57th St. Corp. (282 App. Div. 662) it is the opinion of this court that the defendant here had not given his “ consent ” to the work which plaintiff started and halted without the interference of the defendant. Section 3 of the Lien Law gives a contractor a lien for work done or materials furnished for the improvement of real property when it is done with the consent of the owner and section 2 of that law defines the term “ improvement ” as used in the statute. Here the contractor began work toward making an improvement and then stopped the work and it has failed to show that it performed its agreement or that performance was excused. (Rising v. Kendzie, 12 A D 2d 988.) Even if the consent of the defendant might be shown, it would have had to have been a consent to the construction of a pool, not a portion thereof and since the owner “ did not cause the failure substantially to complete the contract he may not be held ”. (William Saloy, Inc. v. Luhrs, 284 App. Div. 908.) Defendants cannot be held liable for the work done for as it stood incomplete it was not an “ improvement ”. The language used by the court in New York Elevator Supply & Repair Co. v. Bremer (74 App. Div. 400, 402-403, affd. 175 N. Y. 520) is particularly applicable to the facts in this action: “ an owner cannot be charged for improvements which are incomplete and which fail to comply with the terms and specifications under which they were to be done and upon the performance of which the consent is based. * * * If the contractor desires to hold the owner of the building responsible for the work and materials furnished, it is *511 incumbent upon Mm to substantially comply with the terms of the contract in respect to which the consent is given. The law never contemplated that a contractor could work actual damage to a building, fail to complete his contract and then charge the owner with liability for something to which he never consented. In principle there is no difference between such a case and a case where the owner has never consented to the making of the improvement. The contractor is bound to take notice of the rights of the owner and the requirements under which he may be charged, and if the contract to which the owner consents requires a specific thing, substantial compliance must be had therewith or the owner will not be bound. This is an essential element contemplated by the statute and failure to comply with it furnishes no right to a lien.”
Defendants’ motions to dismiss the complaint made at the close of the plaintiff’s case and at the close of the entire case is granted. Defendants having failed to offer any proof on their counterclaim, it is likewise dismissed. No one of the parties shall have costs against any of the others.